# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

| | | |
|---|---|---|
| **CINDY LOVINS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.  2:16-cv-00038-PLC** |
| | ) | |
| **SHERIFF STEPHEN KORTE, et al,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court[1] on motion of Defendants Pike County, Missouri Sheriff Stephen Korte, Major Josh Baker, Deputy Josh Langley, and Detective Joseph Minor for summary judgment [ECF No. 26] on Plaintiff Cindy Lovins' claims under 42 U.S.C. Section 1983 for violations of her Fourth Amendment and Fourteenth Amendment rights.   Deputies Baker, Langley and Minor argue they are entitled to qualified immunity because their conduct did not violate the Fourth Amendment based on (1) either consent or exigent circumstances and (2) clearly established law.   Sheriff Korte contends he is entitled to summary judgment because: (1) the policy of the Pike County Sheriff's Department permits disposal of seized property only following the Pike County prosecuting attorney's instruction and the prosecuting attorney has not so instructed, and (2) Plaintiff has not exhausted her state law remedies.   Defendants also request the Court to decline supplemental jurisdiction over Plaintiff's Missouri state law replevin claim.

### I.      Factual Background

---

[1]  The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c) [ECF No. 6].

Plaintiff Cindy Lovins lived with her son Jessy Lovins at 6500 Pike 457 in Curryville, Missouri on September 6, 2014.[2] Curryville is located in Pike County, Missouri.[3]

James Dougherty and Plaintiff owned a home together.[4] However, according to Plaintiff, Mr. Dougherty did not live with Plaintiff.[5] On September 6, 2014, Mr. Dougherty was at Plaintiff's home because he brought "the grandkids" there.[6]

Sheriff Korte was the elected Sheriff of Pike County, Missouri, and was the policymaker for the Pike County Sheriff's Department ("the Department") during the relevant time period.[7] Deputies Baker, Langley, and Minor were deputy sheriffs for Pike County, Missouri during the relevant time period.[8]

### A. The 911 call and response

At approximately 9:10 p.m. on September 6, 2014, the Department dispatch received a 911 call from Plaintiff's home.[9] The Occurrence Report for the call states that the Reporting Person (or "RP") was Jessy "Lovens [sic]."[10] Jessy Lovins testified that he took sleeping medication and could not recall anything that happened on the night of September 6, 2014.[11]

---

[2] Defs.' statem. uncontroverted material facts ¶¶ 1 and 23 [ECF No. 27] ("Defendants' statement").

[3] Defs.' statem. ¶ 1.

[4] Pl. dep. at 7 [ECF No. 27-1].

[5] Defs.' statem. ¶ 22 [ECF No. 27]; see also Dougherty dep. at 50 [ECF No. 27-11];

[6] Pl. dep. at 37 [ECF No. 27-1].

[7] Defs.' statem. ¶ 3; Pl.'s compl. ¶¶ 10 and 11 [ECF No. 1].

[8] Defs.' statem. ¶¶ 4-6 [ECF No. 27].

[9] Defs.' statem. ¶¶ 7 and 8.

[10] Call History Synopsis in Occurrence Report at 1, Ex. B attached to Defs.' statem. [ECF No. 27-2].

[11] Defs.' statem. ¶ 24 [ECF No. 27].

The Department categorized the call as a "domestic dispute."[12]  The description in the Occurrence Report states:

> RP stated that a Jim Dorty [sic] had a .22cal pistol in hand, and [was] very angry, had been drinking and yelling, RP stated that it is him[,] his mother, and 3 n[i]e[c]es and nephews[,] and Jim Dorty [sic] . . . at the address.  RP stated that this had happened before in the past, and that Jim Dorty [sic] has a drinking problem.[13]

(footnote added).   In response to the call, Deputies Baker, Langley and Minor, as well as Sergeant Brenden McPike and Deputy Jim Suchland,[14] went to Plaintiff's home.    In his deposition, Sergeant McPike testified he was dispatched to the Lovins' residence regarding a domestic dispute involving a firearm.[15]   Sergeant McPike also testified in his deposition that Plaintiff stated James Dougherty pointed a gun at her and her son, Jessy Lovins.[16]   Plaintiff denies that Mr. Dougherty pointed a gun at her or at Jessy Lovins on September 6, 2014.[17]

When Deputy Langley and Sergeant McPike arrived at Plaintiff's home, Deputy Suchland was speaking to Mr. Dougherty outside of the residence.[18]  Mr. Dougherty did not have a gun when Deputy Suchland initially approached him.[19]   The parties dispute whether Mr.

---

[12]  See "Complaint Type" set forth in the Occurrence History section of the Occurrence Report, Ex. B attached to Defs.' statem., at 1 [ECF No. 27-2]; see also Pl.'s compl. ¶ 18 [ECF No. 1] ("On September 6, 2014 . . . [Deputies Baker, Langley and Minor] responded to an alleged domestic disturbance at" Plaintiff's home).

[13]  Call History Synopsis in Occurrence Report, Ex. B attached to Defs.' statem., at 1 and 2 [ECF No. 27-2].

[14]  Defs.' statem.  ¶¶ 9, 11 and 12 [ECF No. 27]; Call History Synopsis in Occurrence Report, Ex. B attached to Defs.' statem., at 1 and 2 [ECF No. 27-2].

[15]  Defs.' statem. ¶ 10 [ECF No. 27]; see also Pl.'s compl. ¶ 18 [ECF No. 1] ("On September 6, 2014 . . . [Deputies Baker, Langley and Minor] responded to an alleged domestic disturbance at" Plaintiff's home).

[16]  Defs.' statem.  ¶ 18 [ECF No. 27].

[17]  Defs.' statem.  ¶  20.

[18]  Defs.' statem.  ¶¶ 11 and 12.

[19]  Defs.' statem.  ¶ 13.

Dougherty advised the responding officers that he had a prior felony conviction.[20]  Mr. Dougherty was arrested outside the home and placed in a patrol car.[21]

### B.  The September 6, 2014, search and seizure at Plaintiff's home

After Mr. Dougherty was secured inside a Department patrol car,[22] Pike County deputies, including Deputies Baker, Langley and Minor, searched Plaintiff's home on September 6, 2014. Prior to searching Plaintiff's home, no Pike County deputy obtained a warrant.

The parties dispute whether Plaintiff consented to the warrantless entry into and search of her home.[23]  During the September 6th search of Plaintiff's home, Sergeant McPike and Deputies Baker, Langley and Minor seized multiple weapons, including the .22 caliber pistol (subsequently identified as a Smith & Wesson pistol) that Mr. Dougherty allegedly used during the reported incident, a large amount of ammunition and various other weapon-related items, and several items not related to weapons.[24]

### C.  Pike County's prosecution of Mr. Dougherty

Following Mr. Dougherty's arrest outside Plaintiff's home and the seizure of guns inside Plaintiff's home on September 6, 2014, the Pike County prosecuting attorney charged Mr. Dougherty with seventeen counts of unlawful possession of a firearm, one count of domestic

---

[20]  Defs.' statem.  ¶ 14.

[21]  Defs.' statem.  ¶ 42; Pl's compl. ¶ 19 [ECF No. 1].

[22]  Pl.'s statem. uncontroverted material facts ("Pl.'s statem.") ¶¶ 1 and 3 [ECF No. 33].

[23]  Pl.'s statem. ¶¶ 6 and 7; see also, Defs.' statem. ¶¶ 19 and 21 [ECF No. 27].

[24]   Defs.' statem. ¶ 33 [ECF No. 27] and Pike County Sheriff's Office Evidence Logs attached as Ex. J. to Defs.' statem. at 2-11 [ECF No. 27-10].

Plaintiff admits that the Department seized the items listed in Exhibit J but denies "that the items listed in Exhibit J fully and exhaustively set forth the items" seized at her home in September 2014.  Pl.'s resp. Defs.' statem. ¶ 33 [ECF No. 32].  Plaintiff provided an eighteen-page "inventory list," with up to thirty-seven items listed on each page, which she alleges accurately sets forth "the property at issue in this lawsuit."  Pl.'s statem. ¶ 20 and Ex. 5 attached to Pl.'s statem. [ECF Nos. 33 and 33-5].

assault, and one count of armed criminal action.[25]  Subsequently, Mr. Dougherty entered into a plea agreement with the Pike County prosecuting attorney.[26]  More specifically, in exchange for the prosecuting attorney's dismissal of all other charges, Mr. Dougherty pleaded guilty to two unlawful-possession-of-a-firearm charges, one involving the Smith & Wesson pistol used in the September 6, 2014 incident and one involving a "Stoeger Coach gun .410."[27]  In accordance with the plea agreement, the Circuit Court of Pike County suspended the imposition of Mr. Dougherty's sentence and placed him on probation for five years.[28]

        As part of Mr. Dougherty's plea agreement, the Pike County prosecuting attorney agreed, as represented in a letter from him to Mr. Dougherty's defense counsel, to return the seized weapons to an individual who signed a statement:  (1) affirming ownership of the weapons and (2) promising not to release the weapons to Mr. Dougherty and not to allow him to possess the weapons.[29]  In his deposition, Mr. Dougherty stated he did not own any of the seized weapons.[30]

### D.  The September 8, 2014 search and seizure at Plaintiff's home

        On September 8, 2014, the Missouri State Highway Patrol ("MSHP") and the Department searched Plaintiff's home.[31]  The Department seized various items, but no weapons, during the

---

[25]  Defs.' statem. ¶ 15 [ECF No. 27]; Pl.'s statem. 9 [ECF No. 33].

[26]  Defs.' statem. ¶ 16 [ECF No. 27].

[27]  Defs.' statem. ¶ 16 [ECF No. 27]; see also Exs. D and F attached to Pike County prosecuting attorney's aff.,  Ex. E attached to Defs.' statem. [ECF Nos. 27-5 at 13-37].

[28]  Defs.' statem. ¶ 17 [ECF No. 27].

[29]  Pl.'s statem. ¶ 11 [ECF No. 33] and affidavit of Mr. Dougherty's defense attorney [ECF No. 33-6].

[30]  Defs' statem. ¶ 34 [ECF No. 27].

[31]  Defs.' statem. ¶ 27.

September 8th search.[32]

MSHP Corporal D. A. Bickel testified in his deposition that, during the September 8th search he found and seized a "white powder substance" that, in his experience, looked like evidence of "[p]ossible drug usage."[33] When he field-tested the "white powder substance" it tested "positive for the presence" of an illegal drug.[34] Consequently, Corporal Bickel then arrested Plaintiff for possession of a controlled substance.[35]

### E. Plaintiff's criminal case

Following Plaintiff's arrest, the Pike County prosecuting attorney charged her with felony possession of cocaine.[36] In connection with her criminal case, Plaintiff filed a motion to suppress evidence seeking suppression of "evidence of drugs found as a result of an illegal search."[37] The text of the motion includes statements that:

1. The Defendant, Cindy Lovins, consented to a limited search for the purpose of a firearm or firearms which were used by . . . [Mr.] Dougherty, in the incident of domestic assault preceding the search of the residence; [and]

2. That with the consent of Cindy Lovins to perform a search of the residence to find the firearms, as stated above, Pike County law enforcement officers conducted said search and located the firearm used in the domestic assault, to-wit: [a] Smith & Wesson, model SW9VE (serial number RDB9002) which had a round in the chamber and thirteen (13) rounds in the magazine.[38]

---

[32] See items listed on the typed Department Evidence Log, dated Sept. 9, 2014, at p. 1 of Ex. J attached to Defs.' statem. [ECF No. 27-10].

[33] Bickel Dep., Ex. I attached to Defs.' statem., at 5 [ECF No. 27-9].

[34] Bickel Dep., Ex. I attached to Defs.' statem., at 6 [ECF No. 27-9].

[35] Bickel Dep., Ex. I attached to Defs.' statem., at 6 [ECF No. 27-9]; Defs.' statem. ¶ 30.

[36] See Pl.'s compl. ¶ 29 (ECF No. 1); and attachm. to Pl.'s compl. [ECF No. 1-7].

[37] Pl.'s mot. to suppress in State v. Lovins, No. 14PI-CR00294-01 (Pike Cty. Cir. Ct.) [ECF No. 50-1].

[38] Pl.'s mot. to suppress in State v. Lovins, No. 14PI-CR00294-01 (Pike Cty. Cir. Ct.) [ECF No. 50-1].

(Footnote added). On April 8, 2015, the Pike County prosecuting attorney dismissed the criminal case against Plaintiff after a laboratory test revealed that the substance confiscated by the MSHP on September 8, 2014, was not an illicit drug.[39]

### F. Department's policy for retention of seized property

Sheriff Korte testified in his deposition that the Department retains seized property until it receives authorization from the Pike County prosecuting attorney to release the property.[40] Sheriff Korte explained that the Department "typically" requests the release of property through the prosecuting attorney's office and is "required" to wait for a directive by the prosecuting attorney or a judicial order to release or destroy any evidence the Department seizes, whether it is contraband or not.[41] Sheriff Korte stated that "the prosecutor reviews [the paperwork the Department submits] to see [if the seized property] no longer [has] any evidentiary value, at which point in time he forwards it to a judge" for an order releasing the property.[42]

According to Sheriff Korte, the Department policy follows a Missouri statute for the disposition of seized property. The statute requires the Department to submit to the prosecuting attorney a request for disposition of seized property.[43] Although during his deposition Sheriff Korte could not remember the specific relevant statutory provision,[44] he later clarified, in response to Plaintiff's statement of facts, that Section 542.301 is the basis for the Department's

---

[39] Defs.' statem. ¶ 32; dismissal attached to Pl.'s compl. [ECF No. 1-7].

[40] Korte dep. at 85, 117-18.

[41] Korte dep. at 75-77, 83 and 84 [ECF No. 33-4].

[42] Korte dep. at 74.

[43] Korte dep. at 68-69.

[44] Korte dep. at 68-69.

"official policy."[45]  Sheriff Korte testified that, at the time he answered interrogatories for this lawsuit, the Department "had over 300 requests filed with the prosecut[ing attorney]'s office" seeking release of retained property.[46]

When asked if a person with an interest in seized property could challenge seizure of the property through the Department, Sheriff Korte testified in his deposition that there is no Department procedure in place allowing a person to challenge the seizure directly with respect to the Department.[47]  According to Sheriff Korte, the Department refers individuals contacting the Department about seized property to the prosecuting attorney's office.[48]  Sheriff Korte further testified that the Department provides to the person from whom property is seized a record of the property the Department seized.[49]

### G.  Plaintiff's request for return of her seized property

After dismissal of her criminal case, Plaintiff asked the Department to return her property.[50]  In response to Plaintiff's request, the Department "filed the paperwork required by the prosecuting attorney" for release of the property, including the firearms, the Department listed as seized from Plaintiff's home in September 2014.[51]  Sheriff Korte testified in his deposition that the Department's investigation regarding items seized from Plaintiff's home is

---

[45] See Defs.' response Pl.'s statem. ¶ 23 [ECF No. 39]; see also id. ¶ 22.

[46] Korte dep. at 75.

[47] Korte dep. at 69.

[48] Korte dep. at 69.

[49] Korte dep. at 78 [ECF No. 33-4].

[50] Pl.'s compl. ¶ 47 [ECF No. 1].

[51] Korte dep. at 73-74; Defs.' statem. ¶ 40.

closed, and the Department did not need Plaintiff's property for any purpose.[52]   The prosecuting attorney has not authorized Sheriff Korte to release the seized items.[53]

The Pike County prosecuting attorney acknowledged that his office received from the Department on March 15, 2016, written requests for the release of items seized from Plaintiff's home in September 2014.[54]   Each written request is on a form titled "Property Control/Evidence Custody Tracking Request for Disposal of Property or Evidence."[55]   The form provides space for a "Description of Property/Evidence"; a "Motion," with a signature line for a Prosecuting Attorney"; an "Order," with a signature line for a "Circuit/Associate Circuit Judge"; and a "Record of Disposition," with a signature line for an "Accountable Officer."[56]   The parties agree that "[t]he Pike County Prosecutor . . . signed [each of the Department's requests] . . . listing particular items of property [seized from Plaintiff and] indicating that [Plaintiff's seized] property 'is not needed in any proceeding in any court and there are no known claims against it.'"[57]

The Pike County prosecuting attorney averred that he reviewed the Department's requests "and determined that [he] needed to retain the items listed . . . until such time as any post-conviction relief (PCR[]) issues were resolved [because Mr.] Dougherty . . . was subject to supervised probation for a period of five (5) years after he entered pleas of guilty on felonies in"

---

[52]   Korte dep. at 79-81 and 117-18; Pl.'s statem. ¶¶ 13 and 14.

[53]   Korte dep. at 84 and 108-09.

[54]   Fisher aff., Ex. E attached to Defs.' statem., ¶¶ 4 and 5 [ECF No. 27-5]; Defs.' statem. ¶ 40 [ECF No. 27].   The prosecuting attorney mentions he received two requests, but the attachment to his affidavit reveals he received three requests, each listing different items of property the Department listed as seized from Plaintiff's home.  See ECF No. 27-5 at 5-10.

[55]   Exs. A and B attached to Fisher aff., attached to Defs.' statem. [ECF No. 27-5 at 5-10].

[56]   Exs. A and B attached to Fisher aff., attached to Defs.' statem. [ECF No. 27-5 at 5-10].

[57]   Pl.'s statem. ¶16 [ECF No. 33].

his criminal cases.[58]  One form included a handwritten note, dated March 31, 2016, stating: "Hold cannot return till [sic] PCR issues + appeals are done."[59]  The prosecuting attorney averred that he wrote the note "stating that [he] would not act on these Requests until after final disposition" of Mr. Dougherty's cases.[60]

## II.    The claims in Plaintiff's complaint

In Count I of her complaint, Plaintiff sues Sheriff Korte under 42 U.S.C. § 1983 in his individual and official capacity, and Deputies Baker, Langley and Minor in their individual capacities, for violating her Fourth and Fourteenth Amendment rights.  Plaintiff alleges Defendants violated her Fourth Amendment rights when they searched her home on September 6, 2014,[61] without a warrant, seized her personal property without a warrant, and arrested her on September 8th without probable cause.  For her Fourteenth Amendment claim, Plaintiff alleges that by retaining her seized property without a hearing, Defendants violated her right to procedural due process.  In Count II, Plaintiff pursues a state law replevin claim against Defendants.

## III.    The summary judgment motion

Defendants seek entry of summary judgment on Plaintiff's Section 1983 claims and request the Court to decline supplemental jurisdiction over the state law replevin claim.  In response to the summary judgment motion, Plaintiff "withdrew" all claims, except, as follows:

---

[58] Fisher aff., Ex. E attached to Defs.' statem., ¶ 7 [ECF No. 27-5].

[59] Defs.' statem. ¶ 41 [ECF No. 27]; Pl.'s statem. ¶17 [ECF No. 33]; see also copy of note at ECF No. 27-5 at 10.

[60] Fisher aff., Ex. E attached to Defs.' statem., ¶ 8 [ECF No. 27-5].

[61] Plaintiff in her complaint and the parties in their summary judgment materials do not explicitly challenge the circumstances of the September 8, 2014 warrantless search and seizure as a violation of any constitutional right.  Therefore, the Court need not address any constitutional or Section 1983 issues pertaining to that search and seizure.

> (1)      her due process rights were violated when [Sheriff] Korte's official policies caused the continued deprivation [of] property seized from [Plaintiff's] home without a post-seizure hearing, and continued detention without legal justification and (2) the individual capacity claims against [Deputies Baker, Langley] and Minor for their warrantless search of [Plaintiff]'s home and seizure of her property without exigency or consent.[62]

(one footnote omitted and one added).   Accordingly, the Court addresses summary judgment with respect to the following claims:   (1) Deputies Baker's, Langley's and Minor's violation of Plaintiff's Fourth Amendment rights during the warrantless search of her home and seizure of her personal property on September 6, 2014; and (2) Sheriff Korte's violation (in his official capacity) of Plaintiff's Fourteenth Amendment right to procedural due process through the continued deprivation of Plaintiff's personal property after it was seized.

Deputies Baker, Langley and Minor argue they are entitled to qualified immunity because the warrantless search and seizure on September 6th did not violate Plaintiff's Fourth Amendment rights due to her consent and the existence of exigent circumstances.   Additionally, Deputies Baker, Langley and Minor contend that, even if they fail to establish exceptions to the warrant requirement, they did not violate "clearly established" law.   In support of the latter argument, Deputies Baker, Langley and Minor assert "the law with respect to whether an entry into a residence to secure a gun involved in a domestic disturbance constitutes exigent circumstances was not clearly established" in September 2014.   Sheriff Korte claims that he is entitled to summary judgment because:   (1) a Department policy permits disposal of seized property only at the Pike County prosecuting attorney's instruction and the prosecuting attorney has not so instructed, and (2) Plaintiff has not exhausted her state law remedies.

---

[62]  Pl.'s mem. opp'n Defs.' mot. summ. j. at 1 [ECF No. 34].

In response, Plaintiff contends that Deputies Baker, Langley, and Minor are not entitled to summary judgment because genuine disputes of material fact exist with respect to whether she consented to the search and seizure, and whether Deputies Baker, Langley and Minor established exigent circumstances. Plaintiff further argues that, in September 2014, a reasonable officer would be aware that a warrantless search of a home without consent or exigent circumstances was not permitted. With respect to Sheriff Korte, Plaintiff urges (1) genuine disputes of material fact exist regarding whether the prosecuting attorney decided to retain the seized property; (2) as a matter of law, the continued retention of the seized property after resolution of the prosecution of Mr. Dougherty is not legally justified; and (3) she does not need to exhaust her state law remedies because she challenges Sheriff Korte's "official policy," rather than Sheriff Korte's "random and unauthorized act," requiring retention of her property.

### A. *Legal Standard*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>Bedford v. Doe</u>, 880 F.3d 993, 996 (8th Cir. 2018). "A genuine dispute arises 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Zubrod v. Hoch</u>, 907 F.3d 568, 575 (8th Cir. 2018) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). Material facts are those "that might affect the outcome of the suit under the governing law." <u>Anderson</u>, 477 U.S. at 248.

The movant "'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" <u>Torgerson v. City of Rochester</u>, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting <u>Celotex Corp. v. Catrett,</u> 477 U.S. 317,

323 (1986)).  The non-movant "respond[s] by submitting evidentiary materials setting out 'specific facts showing that there is a genuine issue for trial.'"  Id.  (quoting <u>Celotex Corp.</u>, 477 U.S. at 324).

The court considering a summary judgment motion reviews the record "taken as a whole."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  A court's function in resolving a summary judgment motion is not to weigh the evidence but to determine whether there is a genuine issue for trial.  <u>Anderson</u>, 477 U.S. at 249.  "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  <u>Torgerson</u>, 643 F.3d at 1042 (internal quotation marks omitted) (quoting <u>Reeves v, Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000)); <u>accord</u> <u>Henderson as Trustee for Henderson v. City of Woodbury</u>, 909 F.3d 933, 940 (8th Cir. 2018) ("disputed factual issues and conflicting testimony should not be resolved by the district court at the summary judgment stage" (internal quotation marks omitted) (quoting <u>Wealot v. Brooks</u>, 865 F.3d 1119, 1128 (8th Cir. 2017)).  Importantly, a court considering summary judgment views facts "'in the light most favorable to the nonmoving party only if there is a "genuine dispute" as to those facts.'"  <u>Ricci v. DeStefano</u>, 557 U.S. 557, 586 (2009) (quoting <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007)).

### B. *Discussion*

#### 1. <u>Fourth Amendment – unreasonable search and seizure</u>

"The issue of qualified immunity is a question of law for the court, rather than the jury, to decide."  <u>Littrell v. Franklin</u>, 388 F.3d 578, 584 (8th Cir. 2004).  "To overcome the defense of qualified immunity the plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right

was clearly established at the time of the deprivation." Meehan v. Thompson, 763 F.3d 936, 940 (8ᵗʰ Cir. 2014) (internal quotation marks and citation omitted). Summary judgment is not available "if there is a genuine dispute concerning predicate facts material to the qualified immunity issue." Greiner v. City of Champlin, 27 F.3d 1346, 1352 (8ᵗʰ Cir. 1994); accord Stoner v. Watlingten, 735 F.3d 799, 805 (8ᵗʰ Cir. 2013).

Law enforcement "officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)). Put another way, "[q]ualified immunity is inappropriate if the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and that right was clearly established at the time of the defendant's alleged misconduct." City of Woodbury, 909 F.3d at 939 (internal quotation marks omitted) (citing LaCross v. City of Duluth, 713 F.3d 1155, 1158 (8ᵗʰ Cir. 2013)). "In analyzing a claim of qualified immunity, [a court] may examine the two key prongs . . . in either order." Moore v. City of Desloge, Mo., 647 F.3d 841, 846 (8th Cir. 2011) (citing Camreta v. Greene, 563 U.S. 692, 705-07 (2011)).

The Fourth Amendment states, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."[63] U.S. Const. amend. IV. "[R]easonableness is always the touchstone of Fourth Amendment analysis." Birchfield v. North Dakota, 136 S. Ct. 2160, 2186 (2016) (citing Brigham City, Utah v. Stuart, 547 U.S. 398, 403 (2006)). "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the

---

[63] "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." Lesher v. Reed, 12 F.3d 148, 150 (8th Cir. 1994) (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)).

circumstances, viewed <u>objectively</u>, justify [the] action.'" <u>Stuart</u>, 547 U.S. at 404 (emphasis and alteration in original) (quoting <u>Scott v. United States</u>, 436 U.S. 128, 138 (1978)).

"It is a 'basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" <u>Id.</u> at 403 (quoting <u>Groh v. Ramirez</u>, 540 U.S. 551, 559 (2004)). Importantly, however, an officer's "search or seizure carried out in an individual's home without a warrant is [not] *per se* unreasonable [if] it falls within one of the well-defined exceptions." <u>Lesher v. Reed</u>, 12 F.3d 148, 151 (8th Cir. 1994) (citing <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 474 (1971)).

Consent to search by a person having authority over the property searched is an exception to the warrant requirement. <u>See</u>, <u>e.g.</u>, <u>Fernandez v. California</u>, 571 U.S. 292, 298 (2014). "Consent searches are part of the standard investigatory techniques of law enforcement agencies and are a constitutionally permissible and wholly legitimate aspect of effective police activity." <u>Id.</u> (internal quotation marks omitted) (quoting <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 228, 231-32 (1973)). "A warrantless consent search is reasonable and thus consistent with the Fourth Amendment irrespective of the availability of a warrant." <u>Fernandez</u>, 571 U.S. at 307.

When a resident of searched premises gives voluntary consent to search, "[a] warrantless search of the residence does not violate the Fourth Amendment." <u>United States v. Cisneros-Gutierrez</u> 598 F.3d 997, 1003 (8th Cir. 2010). "Whether consent was voluntarily given 'is a question of fact to be determined from the totality of the circumstances.'" <u>Id.</u> (quoting <u>Schneckloth</u>, 412 U.S. at 227).

The presence of exigent circumstances is another exception to the warrant requirement. <u>See</u>, <u>e.g.</u>, <u>Mincey v. Arizona</u>, 437 U.S. 385 (1978). "[W]arrants are generally required to search a person's home . . . unless 'the exigencies of the situation' make the needs of law enforcement

so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." Id. at 393-94. As the Supreme Court has held, "absent exigent circumstances, a warrantless entry [into a home] to search for weapons or contraband is unconstitutional even when a felony has been committed and there is probable cause to believe that incriminating evidence will be found within." Groh, 540 U.S. at 559 (internal quotation marks omitted) (quoting Payton v. New York, 445 U.S. 573, 586 (1980)).

The "narrowly drawn" exigent circumstances exception to the warrant requirement "justifies immediate police action without obtaining a warrant if lives are threatened, a suspect's escape is imminent, or evidence is about to be destroyed." United States v. Ball, 90 F.3d 260, 263 (8th Cir. 1996). The Eighth Circuit has "long held the view that legitimate concern for the safety of individuals may constitute exigent circumstances justifying warrantless entries and searches" in a home. United States v. Janis, 387 F.3d 682, 687 (8th Cir. 2004) (internal quotation marks omitted) (quoting United States v. Antwine, 873 F.2d 1144, 1147 (8th Cir. 1989)). Law enforcement officers "bear a heavy burden when attempting to demonstrate an urgent need that might justify" a warrantless search. United States v. Ramirez, 676 F.3d 755, 760 (8th Cir. 2012) (internal quotation marks omitted) (quoting Welsh v. Wisconsin, 466 U.S. 740, 749-50 (1984)).

### (a.) Consent to search

In their memorandum supporting their motion for summary judgment, Deputies Baker, Langley and Minor, acknowledged that Plaintiff disputes consenting to the September 6th search.[64] In light of the dispute, the Deputies did not initially address whether consent supported the warrantless search and seizure.

---

[64] Defs.' mem. supp. mot. summ. j. at 4 [ECF No. 28].

However, in a supplemental brief filed following their reply brief, the Deputies argued that, in a motion to suppress that Plaintiff filed in connection with her criminal case arising out of the September 8th search of her house, Plaintiff admitted to consenting to the September 6th search. According to Deputies Baker, Langley and Minor, the motion to suppress forecloses the existence of a factual dispute regarding consent.

Plaintiff counters that the statement in her motion to suppress is "arguably inconsistent" with her deposition testimony and "may provide grounds for impeachment but does not convert a contested material fact into an uncontested material fact."[65]  Additionally, Plaintiff points out that the "conflict of facts" Deputies Baker, Langley and Minor present in their supplemental statement of uncontroverted material facts "highlights that the question of consent to search is in fact a highly contested fact."[66]

In support of their argument that Plaintiff's motion to suppress establishes consent to search her home and seize her personal property on September 6th, Deputies Baker, Langley and Minor rely on Marathon Ashland Petroleum, LLC., v. International Bhd. of Teamsters, 300 F.3d 945, 951 (8th Cir. 2002) ("Marathon").  In Marathon, the Eighth Circuit stated "that parties to summary judgment cannot create sham issues of fact in an effort to defeat summary judgment and that a district court may grant summary judgment where a party's sudden and unexplained revision of testimony creates an issue of fact where none existed before."  Marathon, 300 F.3d at 951 (internal quotation marks omitted) (emphasis added) (quoting American Airlines, Inc. v. KLM Royal Dutch Airlines, Inc., 114 F.3d 108, 111 (8th Cir. 1997) (addressing the contradictory change in an expert's testimony before and after the filing of the summary judgment motion)).

---

[65] Pl.'s response Defs.' suppl. mem. supp. mot. summ. j. at 1 [ECF No. 55].

[66] Pl.'s response Defs.' suppl. mem. supp. mot. summ. j. at 2.

Noting "the sham exception doctrine is not limited solely to situations when the party submits 'an affidavit contradicting his own <u>earlier testimony</u>,'" the Eighth Circuit concluded a deponent's revision of his testimony "[a]fter a break" during the deposition "was not a mere clarification of his <u>earlier testimony</u>, but was a 'sudden and unexplained revision' to create an issue where none existed before." <u>Marathon</u>, 300 F.3d at 951 (emphases added) (quoting <u>American Airlines, Inc.</u>, 114 F.3d at 111).

Contrary to the argument of Deputies Baker, Langley and Minor, the posture of this case does not justify application of the "sham exception doctrine." Neither Plaintiff's motion to suppress nor her later deposition testimony can fairly be described as either an attempt to "head off" summary judgment by supplanting a previous deposition "<u>ad hoc</u> with a new affidavit," or testimony after a "break" that constitutes a "'sudden and unexplained revision' to create an issue where none existed before." <u>Id.</u> (quoting <u>American Airlines, Inc.</u>, 114 F.3d at 111). To the extent that Deputies Baker, Langley and Minor are seeking to expand the "sham exception doctrine" to cover the circumstances here, they have provided the Court no authority to do so.

The parties do not appear to dispute that the voluntary consent of a resident of a home renders a warrantless search reasonable under the Fourth Amendment. The parties also do not appear to dispute that the circumstances of the interaction between law enforcement and the resident are important to the determination of voluntariness of the consent. Rather, the parties' dispute focuses on whether Plaintiff voluntarily consented to the warrantless search and seizure. Therefore, the existence of a genuine dispute of material fact precludes the entry of summary judgment in favor of Deputies Baker, Langley and Minor unless they demonstrate the existence of exigent circumstances.

**(b.) Exigent circumstances**

Deputies Baker, Langley, and Minor argue exigent circumstances justified their warrantless search of Plaintiff's home on September 6, 2014. In particular, they contend a reasonable officer would have believed that the possible presence of a firearm inside the home posed a "danger to the officers or any other individuals at the scene." Plaintiff asserts Deputies Baker, Langley and Minor failed to adduce undisputed facts establishing exigent circumstances existed, because they admitted in their depositions that no exigent circumstances existed at the time of the search.

Deputies Baker, Langley, and Minor rely on <u>United States v. Henderson</u>, 553 F.3d 1163 (8th Cir. 2009) (per curiam), in support of their position that a legitimate safety concern existed. In <u>Henderson</u>, police officers were dispatched to a home after receipt of a report that a man with a gun "was walking around the house with the weapon saying that he was 'going to kill . . .'" a man who the defendant thought was inside the home. <u>Id.</u> at 1164. When the officers arrived, a woman at the home told them the defendant "had a gun and was inside a bedroom" with a woman. <u>Id.</u> The officers knocked on the bedroom door, then entered and handcuffed the defendant, before searching the bedroom and finding "a gun underneath a sheet on the bed near where [the defendant] and his wife were standing." <u>Id.</u> at 1165. The Eighth Circuit held it was "plain that exigent circumstances justified" the officers' "effort to secure the weapon" despite the fact the defendant was handcuffed prior to the search, "because domestic disturbances are highly volatile and involve large risks and because the police officers had reason to believe that a loaded gun was in the bedroom." <u>Id</u>.

Plaintiff distinguishes the <u>Henderson</u> decision because here Deputies Baker, Langley, and Minor did not demonstrate a legitimate concern for any individual's safety. Specifically,

Plaintiff argues that the deposition testimony of Deputies Baker, Langley and Minor[67] discloses that none believed exigent circumstances existed prior to the search, thus precluding a finding of exigent circumstances supporting a warrantless search.

"The searching officers' subjective motivations are irrelevant." United States v. Valencia, 499 F.3d 813, 815 (8th Cir. 2007). Whether exigent circumstances exist requires an objective analysis focusing on what a reasonable, experienced police officer would believe under the circumstances. Ramirez, 676 F.3d at 759-60 (internal quotation marks and citation omitted); United States v. Leveringston, 397 F.3d 1112, 1116 (8th Cir. 2005).

The Court is not persuaded that the undisputed facts establish a legitimate concern for safety here. In contrast to Henderson, when Deputies Baker, Langley and Minor arrived at Plaintiff's home, the only reportedly armed suspect, Mr. Dougherty, was not armed, close to a weapon, or threatening anyone, and was outside the home. Moreover, the Deputies placed Mr. Henderson in handcuffs and in a patrol car shortly after their arrival, and before the search began.

---

[67] Specifically, Plaintiff points to ¶¶ 2 and 4 in her statement of facts [ECF No. 33] as support for her argument that Deputies Baker, Langley and Minor failed to adduce any facts establishing an exigency. See Pl.'s mem. opp'n Defs.' mot. summ. j. at 13 and 13 n.6 [ECF No. 34]. In response to Plaintiff's fact statement in ¶ 2, that Defendants waited until the scene at Plaintiff's home was secure before beginning their search, Defendants responded by admitting Mr. Dougherty had been placed in the back of a patrol car and continued: "but the weapon allegedly used by James Dougherty had not been recovered" [ECF No. 39]. Defendants also denied Plaintiff's fact statement in ¶ 4, that "[w]hen Langley, Baker, and Minor began their search of [Plaintiff]'s home, there was no danger to anyone there," explaining that "[t]he weapon that had been allegedly used by [Mr.] Dougherty had not been recovered [and] . . . there were small children present and Plaintiff's residence contained a significant amount of weapons and ammunition" [ECF No. 39].

In support of each of those two statements of fact, Plaintiff cited to the same deposition testimony of Deputies Baker, Langley and Minor: (1) Deputy Baker's testimony at page 10, lines 1-22 of his deposition (in which he acknowledged that, when he arrived, Mr. Dougherty was in custody in handcuffs in the back of a car, and both the threat and the scene were secure) [ECF No. 33-2]; (2) Deputy Langley's testimony at page 37, lines 5-9 of his deposition (in which he stated "we started searching once everybody arrived") [ECF No. 33-1]; and (3) Deputy Minor's testimony at both page 15 lines 2-10 of his deposition (acknowledging that when he arrived "the civilians were all in one place under [the Deputies'] control," "the threatening suspect was locked up in handcuffs in the back of the police car" and "the scene was secure") and page 26 lines 9-14 (responding affirmatively to questions whether the scene was secure and "there was no apparent danger [in that] [t]he threat had been removed" before the search started).

While the record demonstrates that others (Plaintiff, her son, and three small children) were at Plaintiff's home when the Deputies arrived, and the gun was in an undisclosed location, those circumstances do not support a different conclusion. Nothing of record shows any of the other individuals present were acting suspiciously, attempting to locate any gun, or threatening anyone with physical harm. Based on the undisputed facts presently before the Court, a reasonable, experienced officer would not believe the circumstances at Plaintiff's home on September 6, 2014 constituted exigent circumstances justifying a warrantless entry into and search of Plaintiff's home.[68]

### 2. Fourth Amendment - clearly-established law

Deputies Baker, Langley and Minor assert that their conduct did not violate clearly established law, because "the law with respect to whether an entry into a residence to secure a gun involved in a domestic disturbance constitutes exigent circumstances was not clearly established."[69] Plaintiff counters that it was clear in September 2014 that an entry into and search of a home by a law enforcement officer without a warrant, consent or exigent circumstances was not permitted in that it was "presumptively unconstitutional" under Groh, supra.

To be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). The right allegedly violated must be established not as a "broad general proposition . . . but in a particularized sense so that the contours of the right are clear to a reasonable official." See, e.g., Reichle, 566 U.S. at 665 (internal quotation marks and

---

[68] Based on this decision, the Court does not address Defendants' contention that there needs to be probable cause, along with exigent circumstances, to support a warrantless entry into and search of a home.

[69] Defs.' mem. supp. mot. summ. j. at 6 [ECF No. 28].

citations omitted). To ascertain whether conduct was "a clearly established constitutional violation, [a court] look[s] to the state of the law at the time of the incident." <u>Shekleton v. Eichenberger</u>, 677 F.3d 361, 366-67 (8th Cir. 2012).

Deputies Baker, Langley and Minor rely only on <u>Henderson</u> in support of their argument. That decision does not, however, stand for the principle that a different exigent circumstances analysis is required for a law enforcement officer's response to a domestic violence call at a home than for a law enforcement officer's response to any other situation of reported violence or threat of violence at a home. A review of relevant case law before September 2014 that analyzed exigent circumstances revealed that case law did not distinguish between domestic violence calls and other calls regarding violence. <u>See</u>, <u>e.g.</u>, <u>United States v. Davis</u>, 290 F.3d 1239, 1244 (10th Cir. 2002) (holding "an officer's warrantless entry of a residence during a domestic call is not exempt from the requirement of demonstrating exigent circumstances"); <u>Smith v. Kansas City, Mo Police Dep't</u>, 586 F.3d 576, 580 (8th Cir. 2000) (finding the presence of a domestic violence suspect inside the home was not alone sufficient to constitute exigent circumstances for a warrantless entry, and upholding the denial of qualified immunity to the officer entering the suspect's home without a warrant) (citing <u>Singer v. Court of Common Pleas, Bucks Cty.</u>, 879 F.2d 1203, 1206-07 (3rd Cir. 1989)). It was clearly established Fourth Amendment law in September 2014 that a law enforcement officer's warrantless entry into a home in response to a call reporting actual or threatened violence to a person was justified if a reasonable, experienced officer would believe exigent circumstances existed, regardless of whether the type of violence reported was domestic violence or another type of violence.

### 3. Fourth Amendment - conclusion with respect to qualified immunity

The Court concludes that there are issues of fact on the question of Plaintiff's consent. In addition, the Court concludes there are sufficient facts from which a jury could find the absence of exigent circumstances. Finally, the Court concludes that the law was clearly established during the relevant time period that, in the absence of consent and exigent circumstances, a warrant was required to enter a home, even where a domestic dispute prompted law enforcement interaction. Accordingly, the Court denies summary judgment with respect to Deputies Baker, Langley and Minor.

### 4. **Fourteenth Amendment - procedural due process**

Sheriff Korte argues he is entitled to summary judgment on Plaintiff's Section 1983 claim for a violation of her right to procedural due process because: (1) a Department policy permits disposal of seized property only at the Pike County prosecuting attorney's instruction and the prosecuting attorney has not so instructed, and (2) Plaintiff has not exhausted her state remedies. Plaintiff responds that: (1) the record shows genuine disputes of material fact exist regarding whether the prosecuting attorney decided to retain the seized property; (2) as a matter of law, the continued retention of the seized property after resolution of the prosecution of Mr. Dougherty is not legally justified; and (3) she does not need to exhaust her state law remedies because she challenges a policy requiring the retention of her property.

Plaintiff claims that Sheriff Korte, acting in his official capacity, is liable under Section 1983 for violating her Fourteenth Amendment procedural due process rights by refusing to return her seized property "for an indefinite, unascertainable period without a hearing."[70] For a plaintiff to prevail on a Section 1983 claim for violation of the plaintiff's right to procedural due process, "a plaintiff, first, must establish that [her] protected liberty or property interest is at stake. Second, the plaintiff must prove that the defendant deprived [her] of such an interest

---

[70] Pl.'s opp'n Defs.' mot. summ. j. at 3 [ECF No. 34].

without due process of law."[71]   Schmidt v. Des Moines Pub. Sch., 655 F.3d 811, 817 (8th Cir. 2011).

"A § 1983 action against a government official in his official capacity . . . is tantamount to an action directly against the public entity of which the official is an agent.  See Monell v. Department of Soc. Servs., 436 U.S. 658, 690 n. 55 (1978)."  Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir. 1987).  The public entity "may be held liable for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional municipal policy or custom."  Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999).  To establish liability, a plaintiff must show "the 'policy [or] custom' was the moving force behind [her] injury."  Burlison v. Springfield Pub. Sch., 708 F.3d 1034, 1041 (8th Cir. 2013) (discussing a Section 1983 claim against a sheriff sued in his official capacity).  The terms "policy" and "custom" are not interchangeable for a Monell analysis.  Mettler, 165 F.3d at 1204.  A policy for purposes of an official capacity claim under Section 1983 "is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters."  Id.

The Fourteenth Amendment Due Process Clause provides that "[n]o State . . . shall  . . . deprive any person of life, liberty, or property without due process of law.  U.S. Const. amend. XIV, § 1.  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (internal quotation marks and citations omitted).  Due process is a flexible concept, requiring only "such procedural protections as the particular situation demands."  Id. at 334 (internal quotation marks and citation omitted).  "The circumstances of the [alleged] deprivation dictate

---

[71]  The parties do not dispute that Plaintiff's protected interest in her seized property is at stake.

what procedures are necessary to satisfy procedural due process." Schmidt v. Des Moines Pub. Sch., 655 F.3d 811, 818 (8th Cir. 2011) (internal quotation marks and citation omitted).

The undisputed record establishes that the Department follows a policy requiring, pursuant to Section 542.301, the Department to release property after the prosecuting attorney authorizes the release based on requests for release submitted by the Department. Additionally, the undisputed record demonstrates that the Department's investigation with respect to Plaintiff's seized property is closed, and Sheriff Korte complied with the Department policy by submitting requests for release of Plaintiff's property to the prosecuting attorney's office after Plaintiff requested that the Department return her property. Nonetheless, the Department continues to retain Plaintiff's property.

Sheriff Korte asserts that Plaintiff cannot pursue her procedural due process claim at this time "given the current procedural posture of the criminal charges pending against" Mr. Dougherty. More specifically, Sheriff Korte contends that, because Mr. Dougherty received a suspended imposition of sentence, "the charges against Mr. Dougherty for unlawful possession of a weapon for which he pleaded guilty remain pending."[72] Therefore, under the Department's policy, Sheriff Korte argues, the Department may retain the property without providing a post-deprivation hearing or process until the property is no longer needed for Mr. Dougherty's cases. Plaintiff urges that the continued retention of the seized property is not legally justified due to the resolution of the prosecution of Mr. Dougherty.

In support of his argument, Sheriff Korte relies on the statement in Rodgers v. Knight, 781 F.3d 932 (8th Cir. 2015), that "[w]here retention of evidence is justified by pending charges or an arrest warrant, no further process is required. Likewise, if evidence is needed for an

---

[72] Defs.' mem. supp. mot. summ. j. at 12 [ECF No. 28].

ongoing or proposed specific investigation, law enforcement authorities are entitled to retain it." Id. at 941 (internal quotation marks and citations omitted). The factual record does not support a conclusion that either the Department or the Pike County prosecuting attorney asserts a need for the property due to either an arrest warrant or "an ongoing or proposed specific investigation." Therefore, the Court focuses on whether Rodgers supports the Department's retention of Plaintiff's property because of "pending charges."

In Rodgers, a plaintiff, who had criminal charges "pending or the subject of appellate proceedings," challenged the police department's retention of firearms without a post-deprivation hearing. Id. The Eighth Circuit affirmed the district court's decision that the guns were properly retained as "potential evidence in future court proceedings." Id. The Court specifically found the prosecutors and police "had a reasonable basis to retain the seized firearms as evidence" that the plaintiff unlawfully possessed them "[t]hroughout th[e] time" the charges were "pending or [were] the subject of appellate proceedings." Id. Importantly, the Court noted that all of the seized weapons, other than the one that was the basis of the unlawful possession charge against the charged plaintiff, were returned to the plaintiff or his father "before [the plaintiff]'s criminal case was resolved." Id. The police returned the other weapon "within three months after the state supreme court refused to hear an appeal in [the plaintiff]'s criminal case," which delay the Court concluded "was reasonable [under the circumstances] and thus did not violate the Constitution." Id.

In support of his argument that Mr. Dougherty's charges are pending, Sheriff Korte relies on Yale v. City of Independence, 846 S.W.2d 193, 195 (Mo. 1993) (en banc). In Yale, the Missouri Supreme Court held that a suspended imposition of sentence is not a final judgment following State v. Lynch, 679 S.W.22d 848 (Mo. 1984) (en banc). The purpose of the suspended

imposition of sentence is to provide "[w]orthy offenders . . . a chance to clear their records by demonstrating their value to society through compliance with conditions of probation under the guidance of the court." Yale, 846 S.W.2d at 195. The suspended imposition of a sentence is a "tool" for trial judges. Id.

In considering the impact of the suspended imposition of sentence in Yale, the Missouri Supreme Court reaffirmed the approach used in Warren v. Director, Missouri Div. of Health, 565 S.W.2d 740 (Mo. Ct. App. 1978). In Warren, the Court defined a "conviction" in connection with a suspended imposition of sentence as follows:

> the term will be used in its popular sense of meaning the verdict of guilty when reference is made to the successive steps in the criminal proceeding; but the term may be used in the more strict sense of requiring a final judgment, when the context of the situation involves some collateral adverse consequences such as the loss of privileges or the imposition of a disability.

Id. at 743.

Sheriff Korte asserts that, if Mr. Dougherty's probation is revoked with respect to the two charges to which he pleaded guilty, the state court may impose sentence on the two charges and the conviction would then be subject to post-conviction remedies under Missouri law.[73] Therefore, he urges, the seized "weapons, ammunition and related items . . . are needed by a pending criminal prosecution."[74] Sheriff Korte further argues, without citation of authority, that the prosecuting attorney "may still refile the counts that were dismissed [as part of Mr. Dougherty's plea agreement] in the event that Mr. Dougherty's probation is revoked so long as the applicable statute of limitations has not run."[75] Otherwise, Sheriff Korte does not cite

---

[73] Defs.' mem. supp. mot. summ. j. at 12 [ECF No. 28].

[74] Defs.' mem. supp. mot. summ. j. at 12 [ECF No. 28].

[75] Defs.' mem. supp. mot. summ. j. at 12 [ECF No. 28].

authority in support of his proposition that a "suspended imposition of sentence" is analogous to pending criminal charges.

Moreover, Sheriff Korte's argument is in some respects beside the point. Plaintiff's weapons are presumably related to proof of the facts of Mr. Daugherty's cases. However, "a plea of guilty is a confession of the truth of the acts stated in" the charging document. State v. Armstrong, 433 S.W.2d 270, 272 (Mo. 1968). If, in fact, the circuit court were to revoke Mr. Dougherty's probation, the facts of his case would not be at issue. Rather, the court would have the authority only to "impose any sentence within the limit set by law for the offense." Hoskins v. State, 329 S.W.3d 695, 698 n. 3 (Mo. 2010) (en banc).

Plaintiff urges this case is governed by Walters v. Wolf, 660 F.3d 307 (8th Cir. 2011) and Lathon v. City of St. Louis, 242 F.3d 841 (8th Cir. 2001), rather than Rodgers. In Walters, the Eighth Circuit concluded that the police department's policy of refusing to return a seized weapon without a court order, after the dismissal of the criminal charges related to the seized weapon, as well as removal of a separate active warrant against the plaintiff, "has no attendant exigencies prohibiting or making impractical a reasonable predeprivation process." Walters, 660 F.3d at 314. The Court found the case "involve[d] two deprivations: the first being [the] initial seizure of the handgun and ammunition incident to [the plaintiff]'s arrest and the second being [the police chief]'s subsequent and continued refusal to surrender the property" without a court order after dismissal of the related charge. Id. The first seizure was valid and did not require further due process protections because it was "for criminal investigatory purposes" and complied with the Fourth Amendment. Id.

With respect to the "second deprivation," the Eighth Circuit concluded it "require[d] a new due process analysis [because] the defendants, with no legal grounds, refused to return [the

plaintiff]'s property."  Id.  The district court granted the defendants summary judgment upon

finding the plaintiff's failure to pursue state law remedies was "fatal" to his due process claim.

Id. at 313.  The Eighth Circuit reversed, because the plaintiff's due process claim challenging the

retention of the weapon and ammunition was not based on a random and unauthorized act but on

a policy.  Id.  314-16, 318.  In concluding the second deprivation "had no attendant exigencies

prohibiting or making impractical a reasonable predeprivation process," the Eighth Circuit found

its decision in Lathon, supra, controlling.  Walters,  660 F.3d at 314-15.

In Lathon, the Eighth Circuit reversed an order granting summary judgment on a

procedural due process claim arising out of the refusal to return firearms and ammunition seized

during execution of a search warrant, when the plaintiff was not charged with an offense related

to the seized property.  Lathon, 242 F.3d at 842. In granting summary judgment for the

defendants, the district court focused on the probable cause supporting the search warrant and

found the warrant rendered the parties' "dispute over whether or not the police acted in

accordance with a policy" irrelevant.  Id. at 843.  The Eighth Circuit held the district court erred

"in holding that the valid search warrant defeated [the plaintiff]'s constitutional claim."  Id.  The

Eighth Circuit found "[t]he pivotal deprivation . . . was . . . the refusal to return [the seized

property] without a court order after it was determined that the[ seized] items were not

contraband or required as evidence in a court proceeding."  Id.   Because the "refusal to return

[the plaintiff]'s property was not a random or unauthorized act," but instead followed a policy,

the Eighth Circuit concluded the plaintiff's access to a postdeprivation remedy was "not relevant

to whether [the plaintiff] may maintain his Section 1983 claims."  Id. at 843-44.

The Court concludes that the Walters and Lathon decisions are more persuasive than

Rodgers under the circumstances.  The Lathon decision focused on the failure to release seized

property without a court order "after it was determined that the[ seized] items were not contraband or required as evidence in a court proceeding." In Walters, the Eighth Circuit concluded "no attendant exigencies prohibiting or making impractical a reasonable predeprivation process," existed after the dismissal of criminal charges. Walters, 660 F.3d at 314-15. The record here demonstrates that the seized property is not contraband, Sheriff Korte has no further need for the seized property, and the request for return of the property occurred following the entry of a guilty plea to two charges and dismissal of other charges. Given the factual record, Sheriff Korte is not entitled to summary judgment as a matter of law.

In addition, under other circumstances, the Eighth Circuit has concluded that an offender entering a guilty plea admits "each allegation contained in the indictment" and "the indictment serve[s] no further purpose and was . . . extinguished" because "[i]ts primary function [was] satisfied" by the plea. United States v. Hill, 210 F.3d 881, 884 (8th Cir. 2000). Although the Hill decision did not address a procedural due process claim, its holding that a defendant with a prior Missouri suspended imposition of sentence could not be considered as "under indictment," is instructive. Id. In the absence of Missouri authority supporting Sheriff Korte's position that a suspended imposition of sentence is analogous to pending criminal charges, the Court concludes that summary judgment is not appropriate where Sheriff Korte argues that he is complying with a Missouri statute under which seized property is properly retained while criminal charges are pending.

Sheriff Korte urges Plaintiff must exhaust state remedies before asserting a claim for the deprivation of procedural due process, citing Hopkins v. City of Bloomington, 774 F.3d 490, 492 (8th Cir. 2014). Plaintiff counters that she need not pursue state remedies prior to asserting her procedural due process claim, because she asserts a claim based on the implementation of a

policy, rather than an individual's random and unauthorized acts, citing <u>Walters</u>, <u>supra</u>, and <u>Lovins</u>, <u>supra</u>.

Sheriff Korte does not dispute that Plaintiff need not pursue state law remedies if the deprivation is the result of a policy, rather than "the result of a random and unauthorized act," but urges (1) Section 542.301 explicitly permits a property owner to seek return of the property by filing a motion in court, so Plaintiff must do that before pursuing her due process claim; and (2) Plaintiff must seek relief through a post-deprivation remedy to the extent she contends the Department retains more of her property than is listed on the Department's listing of seized property. As to the former, the Court is not persuaded that Plaintiff's argued access to a state court proceeding under Section 542.301 precludes her from pursuing her due process claim when, pursuant to Department policy, Sheriff Korte did not advise her of her ability to file her own motion under the statute, but instead referred her to the prosecuting attorney, when she inquired about obtaining return of her property. Plaintiff's procedural due process claim regarding items the Department listed as seized from Plaintiff's home arises out of implementation of Department policy and, therefore, Plaintiff need not pursue state remedies prior to filing a Section 1983 claim with respect to property listed by the Department as seized.

The Court agrees with Sheriff Korte that the alleged deprivation of any property not listed as seized by the Department falls within the "random and unauthorized" act category of deprivation. The Department's policy requires the Department to list all items seized from a person. Nothing of record, other than Plaintiff's argument and list, demonstrates that Department personnel seized property from Plaintiff's home other than the items listed on the Department's list of seized property. To the extent Plaintiff relies on her own eighteen-page, up-to-thirty-seven-items-per-page list as setting forth the property that is at issue in this case,

Plaintiff must pursue her state remedies, rather than her procedural due process claim. See, e.g., Clark v. Kansas City, Mo Sch. Dist., 375 F.3d 698 (8th Cir. 2004) (the plaintiff needed to pursue a state replevin action to satisfy due process requirements because the unauthorized, random acts of employees, rather than an established procedure, allegedly deprived the plaintiff of her property).

**5. Conclusion**

After careful consideration,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment [ECF No. 26] is **DENIED** with respect to all Defendants on the claims not withdrawn by Plaintiff.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of January, 2019